# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CHRIS ROBINSON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | **Civil Action No. _____** |
| vs. | ) ) ) | |
| RSP PERMIAN, INC., MICHAEL GRIMM, STEVEN GRAY, JOSEPH B. ARMES, SCOTT MCNEILL, KENNETH V. HUSEMAN, MATTHEW S. RAMSEY, MICHAEL S. WALLACE, CONCHO RESOURCES, INC., and GREEN MERGER SUB INC. | ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMAND** |
| Defendants. | ) ) ) | |

## CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Chris Robinson ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of itself and all other public stockholders of RSP Permian, Inc. ("RSP" or the "Company"), against RSP, and the Company's Board of Directors (the "Board" or the "Individual Defendants"), Concho Resources, Inc. ("Parent") and Green Merger Sub, Inc. ("Merger Sub" collectively with Parent, "Concho")(collectively with the Company and the Individual Defendants, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of Defendants' efforts to sell the

Company to Concho as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on a proposed stock for stock transaction in which Concho will acquire each outstanding share of RSP common stock for 0.320 shares of Concho common stock, valued at approximately, $50.24 per share based on Concho's closing price on March 27, 2018, with a total valuation of approximately $9.5 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 28, 2018 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").

3.      Thereafter, on April 19, 2018, Concho filed a Registration Statement on Form S-4 (the "S-4") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, as noted in the S-4, the sales process was hastily conducted without a proper market check, and without the oversight of a committee of independent board members.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits while the Company's stockholders are cashed out at an unfair price.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange large, illiquid blocks of Company stock for massive payouts, in addition to receiving cash in exchange for all outstanding and unvested options and/or other types of restricted stock units.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the

consummation of the Proposed Transaction. Such large paydays upon the consummation of the Proposed Transaction, have clearly tainted the motivations of the Board in approving it.

6.      Further exacerbating this issue, the S-4 fails to properly identify the ownership interests of the RSP Board, Officers, and other Company insiders, leaving Plaintiff and other stockholders to guess at the motivation behind the Board's actions taken during the sales process leading up to the Proposed Transaction.

7.      Defendants breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues RSP and is the result of a flawed sales process. Given the dilutive effect of their ownership in the post-closure company, RSP stockholders will see their investment of any and all future profitability of RSP greatly diminished.

8.      Finally, in violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and their fiduciary duties, Defendants caused to be filed the materially deficient S-4 on April 19, 2018 with the SEC in an effort to solicit stockholders to vote their RSP shares in favor of the Proposed Transaction. The S-4 is materially deficient and deprives RSP stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction. As detailed below, the S-4 omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the Company's financial projections; (c) Concho's financial projections; and (d) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Tudor, Pickering, Holt & Co. ("TPH").

9.      Absent judicial intervention, the merger will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

10.      Plaintiff is a citizen of the State of Texas and, at all times relevant hereto, has been a RSP stockholder.

11.      Defendant RSP is an independent oil and natural gas company that engages in the acquisition, exploration, exploitation, development, and production of unconventional oil and associated liquids-rich natural gas reserves in the Permian Basin of West Texas.  It owns interest in contiguous acreage blocks in the core of the Midland Basin primarily in the adjacent counties of Midland, Martin, Andrews, Dawson, Ector, and Glasscock; and in Loving and Winkler counties of the Delaware Basin.  RSP is a Delaware corporation with its principal executive offices located at 3141 Hood Street, Suite 500, Dallas, Texas 75219.

12.      Defendant Michael Grimm ("Grimm") has been a Director of the Company at all relevant times.  In addition, Grimm co-founded RSP and has served as the Chairman of the Company Board since its founding.

13.      Defendant Steven Gray ("Gray") has been a director of the Company at all relevant times.  In addition, Gray co-founded RSP and has served as the Chief Executive Officer ("CEO") of RSP since its founding.

14.      Defendant Joseph B. Armes ("Armes") has been a director of the Company at all relevant times.  In addition, Armes serves as the Chair of the Board's Audit Committee and as

a member on the Board's Compensation and Nominating and Corporate Governance Committees.

15.     Defendant Scott McNeill ("McNeill") has been a director of the Company at all relevant times.  In addition, McNeill has served as the Company's Chief Financial Officer ("CFO") since its inception.

16.     Defendant Kenneth V. Huseman ("Huseman") has been a director of the Company at all relevant times.  In addition, Huseman serves as a member on the Board's Audit, Compensation, and Nominating and Corporate Governance Committees.

17.     Defendant Matthew S. Ramsey ("Ramsey") has been a director of the Company at all relevant times.  In addition, Ramsey serves as the Chair of the Board's Compensation Committee and as a member on the Board's Audit and Nominating and Corporate Governance Committees.

18.     Defendant Michael W. Wallace ("Wallace") has been a director of the Company at all relevant times.  In addition, Wallace serves as a member on the Board's Nominating and Corporate Governance Committee.

19.     Defendants Grimm, Gray, Armes, McNeill, Huseman, Ramsey, and Wallace, identified in ¶¶ 12 - 18 are collectively referred to as the "Individual Defendants."

20.     Parent is an independent oil and natural gas company, engages in the acquisition, development, and exploration of oil and natural gas properties in the United States.  Parent's principal operating areas are located in the Permian Basin of southeast New Mexico and west Texas.  As of December 31, 2017, its total estimated proved reserves were 840 million barrels of oil equivalent.  Parent is a Delaware corporation with its principal place of business at 600 W. Illinois Avenue, Midland, Texas 79701.

21.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent, and can be served care of its agent for service of process, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because RSP has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of RSP common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26.     This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable.  As of February 23, 2018, there were more than 159 million common shares of RSP stock outstanding.  The actual number of public stockholders of RSP will be ascertained through discovery;

b. There are questions of law and fact which are common to the Class, including *inter alia*, the following:

    i. Whether Defendants have violated the federal securities laws;

    ii. Whether Defendants made material misrepresentations and/or omitted material facts in the S-4; and

    iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

### THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

27.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with RSP and owe the Company the duties of due care, loyalty, and good faith.

28.    By virtue of their positions as directors and/or officers of RSP, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause RSP to engage in the practices complained of herein.

29.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

30.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of RSP, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

31.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to RSP, Plaintiff and the other public stockholders of RSP, including their duties of loyalty, good faith, and due care.

32.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their RSP common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### Company Background

33.     RSP is an independent oil and natural gas company that engages in the acquisition, exploration, exploitation, development, and production of unconventional oil and associated liquids-rich natural gas reserves in the Permian Basin of West Texas.  It owns interest in contiguous acreage blocks in the core of the Midland Basin primarily in the adjacent counties of Midland, Martin, Andrews, Dawson, Ector, and Glasscock; and in Loving and Winkler counties of the Delaware Basin.

34.     As shown below, RSP has been tremendously successful of late, with the Company's strong financial performance across 2017 nearly "doubling the size of the Company", according to CEO Gray.

35.     Specifically, the Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance.  For example, in a February 27, 2018, press release announcing its 2017 Q4 and FY financial results, the Company noted such highlights as the following:

- 4Q17 production increased 74% to 62.4 MBoe/d (71% oil, 88% liquids) compared to 4Q16 and full year 2017 production increased 89% to 55.3 MBoe/d (72% oil, 88% liquids) compared to 2016;
- 4Q17 net income was $140.8 million, or $0.89 per diluted share and adjusted net income (non-GAAP), which does not include certain items, was $50.1 million, or $0.32 per diluted share.  Full year 2017 net income was $232.1 million, or $1.49 per diluted share and adjusted net income (non-GAAP), which does not include certain items, was $128.6 million, or $0.83 per diluted share;

- 4Q17 adjusted EBITDAX (non-GAAP) increased 102% to $182.4 million compared to 4Q16, and increased 26% compared to 3Q17. Full year 2017 adjusted EBITDAX (non-GAAP) increased 134% to $587.0 million compared to 2016;
- Full year 2017 development capital expenditures of $673.3 million;
- Maintained strong year-end liquidity position of $561.2 million, including $523.1 million of available borrowing capacity under the Company's revolving credit facility and $38.1 million of cash;
- Proved reserves increased by 59% to 376 MMBoe (70% oil, 87% liquids) compared to 2016; achieved low drill-bit finding and development cost of $6.26/Boe, with a 771% reserve replacement ratio and a 536% organic reserve replacement ratio;

36.    In addition to these positive financial results, the Company also experienced positive and meaningful progress in its operations in both the Midland and Delaware Basins, with several wells at each site producing on target and/or meeting their development goals.

37.    Speaking on these tremendous results, President and CEO of RSP Defendant Gray stated, "I am proud of our Company's accomplishments in 2017.  We delivered on our annual guidance objectives while nearly doubling the size of the Company, integrating a new operating area in the Delaware Basin and building out the infrastructure and team to accommodate our increased activity levels and production growth in 2018.  We continue to see impressive well results in both our Midland and Delaware Basin assets and this increased well productivity enabled us to meet the mid-point of our production guidance despite completing twenty fewer horizontal wells than we originally budgeted."

38.    Moreover, the Company was high on the 2017 Q4 and FY results, predicting strong financial results based of them in its 2018 Guidance and 2019-2020 Preliminary Outlook. For example, RSP notes that it expects to "generate cash flow in excess of development spending by the fourth quarter of 2018", and an expectation of "30%-plus annual production growth in 2019 and 2020 with substantial free cash flow generated".

39.    Speaking on this positive future outlook for RSP, Gray stated, "We are well positioned for strong returns in 2018 as we continue to increase our capital efficiency levels and accelerate the completion of our drilled but uncompleted wells carried over from last year's drilling program.  We also expect to generate cash flow in excess of our development spending by the fourth quarter of 2018 while growing production 35% at the mid-point of our guidance."

40.    This recent success has not gone unnoticed by those in the financial media. Notably, in a March 7, 2018, *TheStreet*, article, financial journalist Kinsey Grant reports on Goldman Sachs' bullish opinion on several oil companies, including RSP, and the industry as a whole.  Notably, as Grant reports, "RSP has outperformed the SPDR S&P Oil & Gas Exploration ETF (XOP) by 11% and is higher 9% year to date."  Furthermore, the article notes that Goldman Sachs' opines on RSP future value stating, "RSP shares still trade at a discount relative to other high-quality Permian E&P names."

41.    Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused RSP to enter into the Proposed Transaction, thereby diluting Plaintiff's and other RSP public stockholders' interest in the Company and diminishing their opportunity to reap the benefits of RSP's present and future success.

***The Flawed Sales Process***

42.    The process deployed by the Individual Defendants was flawed and inadequate, and conducted out of the self-interest of the Individual Defendants, and seems to have been designed solely to effectuate a quick transaction for Concho's benefit.  Of particular note, the Company failed to conduct a proper market check for other interested third parties.

43.    The S-4 reveals that the sales process conducted by the Company was nearly non-existent at the time of discussions between Concho and the Company.  Specifically, besides

interest from one other strategic party ("Company A"), initiated by Company A itself, the S-4 notes that the Board did not make any outreach efforts whatsoever or discuss any possible strategic alternatives with any other potentially interested third party.

44.     Such a lack of outreach is noteworthy, considering the Board's insistence that a "pure play" combination with another strategic entity in the Permian Basin sector would be the most desirable type of transaction.  While the S-4 does note that Concho and Company A represented the two largest competing entities in that sector, it fails to disclose information regarding the Board's decision to forego a market check for interest from any other such entities.

45.     Furthermore, the S-4 reveals that no independent committee of Company Directors was created to oversee the sales process.  This is especially problematic given that the S-4 does not contain information relating to the amount of RSP stock owned by Company insiders, especially Defendant Gray, who ran the sales process.

46.     Moreover, the S-4 fails to disclose the nature of the confidentiality agreements entered into between RSP and Concho and between RSP and Company A.  Specifically, the S-4 does not reveal if the confidentiality agreements contained standstill provisions that amounted to "don't-ask, don't-waive" provisions, and, if so, under what specific conditions, if any, such provisions would fall away.

***The Proposed Transaction***

47.     On March 28, 2017, RSP and Concho issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **Midland, Texas and Dallas, Texas, March 28, 2018 –** Concho Resources Inc. (NYSE: CXO) and RSP Permian, Inc. (NYSE: RSPP) today announced they have entered into a definitive agreement under which Concho will acquire RSP in an all-stock transaction valued at approximately $9.5 billion, inclusive of RSP's net debt. The consideration will consist of 0.320 shares of Concho common stock for

each share of RSP common stock.  The transaction was unanimously approved by the board of directors of each company.

Highlights

- Large, highly-complementary acreage expands Concho's strategic portfolio in the Permian Basin to approximately 640,000 net acres

- Reinforces leadership position as the premier Permian pure-play company and creates the largest crude oil and natural gas producer from unconventional shale in the Permian Basin

- Combined company to run the largest drilling program in the Permian Basin with 27 rigs

- Meaningfully expands premium resource base

- Drives significant operational synergies through development optimization, shared infrastructure and capital efficiencies, with a present value of more than $2 billion

- Expect to realize over $60 million in annual corporate level savings

- Immediately accretive to key per-share metrics, including net asset value, earnings, cash flow and debt-adjusted growth

- Expect to maintain investment grade credit ratings

- Enhances Concho's three-year annualized production growth outlook within cash flow from operations

Tim Leach, Chairman and Chief Executive Officer of Concho, commented, "This transaction provides a compelling opportunity for both Concho and RSP shareholders to benefit from the strength of our combined company.  The RSP team built an exceptional high-margin asset portfolio consistent with our playbook – large, contiguous positions in the core of the Permian Basin.  And they did so with a strategy of maximizing well performance and returns, which provides substantial running room for continuous development with large-scale projects.  This combination allows us to consolidate premier assets that seamlessly fold into our drilling program, enhance our scale advantage and reinforce our leadership position in the Permian Basin, all while strengthening our platform for delivering predictable growth and returns.  We look forward to welcoming RSP's employees as members of the Concho team."

Steve Gray, Chief Executive Officer of RSP, commented, "I am extremely proud of the RSP team and the high-quality position we built in the Permian Basin. As

RSP has grown and we have seen the resource play develop in the Permian, we have come to recognize that combining with a company with the scale, investment grade balance sheet and operational excellence of Concho will unlock even more value for shareholders. The combined company will have the vision and necessary financial strength to efficiently develop the tremendous resource potential of these assets with large-scale projects."

The acquisition will add approximately 92,000 net acres that strongly complement Concho's existing acreage position in the Permian Basin. The combined position will cover more than 640,000 net acres. In fourth-quarter 2017, production on RSP's assets totaled approximately 55.5 thousand barrels of oil equivalent (Boe) per day on a two-stream basis, of which approximately 80% was crude oil and 20% was natural gas. The transaction adds 2.2 billion Boe of resource potential, of which nearly two-thirds is premium resource.

The combined company will run the largest drilling and completion program in the Permian Basin. With a focused portfolio and substantial scale advantage, the benefits of this transaction are expected to drive corporate level savings and operational synergies by combining the complementary assets and the technical skills of both company's employees. Specific operational synergies include: asset optimization, directing capital to high-return manufacturing-style projects and utilizing shared infrastructure systems. The present value of corporate and operational synergies is expected to exceed $2 billion.

The acquisition is expected to be accretive in the first year to Concho's key per-share metrics, including net asset value, earnings, cash flow and debt-adjusted growth. In addition, the transaction is expected to enhance Concho's three-year outlook for annualized production growth on a capital program within cash flow from operations.

Transaction Details

Under the terms of the definitive merger agreement, shareholders of RSP will receive 0.320 shares of Concho common stock in exchange for each share of RSP common stock, representing consideration to each RSP shareholder of $50.24 per share based on the closing price of Concho common stock on March 27, 2018. The consideration represents an approximately 29% premium to RSP's closing price of $38.92 on March 27, 2018. Upon closing of the transaction, Concho shareholders will own approximately 74.5% of the combined company, and RSP shareholders will own approximately 25.5%. The resulting capital structure is consistent with Concho's long-term strategy of maintaining a strong financial position.

The transaction, which is expected to be completed in the third quarter of 2018, is subject to the approval of both Concho and RSP shareholders, the satisfaction of certain regulatory approvals and other customary closing conditions.

Upon closing, Concho's board will be expanded to 11 directors, to include one independent member of the RSP board. Concho will continue to be headquartered in Midland, Texas.

### *The Inadequate Merger Consideration*

48.    Significantly, analyst expectations and the Company's financial prospects and opportunities for future growth, and synergies with Concho establish the inadequacy of the merger consideration.

49.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.   The proposed valuation does not adequately reflect the intrinsic value of the Company.   Moreover, the valuation does not adequately take into consideration how the Company is performing, considering its significant financial progress in growing the Company within the past year.

50.    Notably, recent financial analyst coverage that indicates a high target above the deal price, with financial analysts from Goldman Sachs valuing the Company at $63.00 per share within 52-weeks of the Merger Announcement.   *Notably, this amount reflects a value approximately 25.40% above the value being proffered in the Proposed Transaction.*

51.    Additionally, RSP's future success is extremely likely, given the consistent increases in its total revenues, and its steady achievement of regulatory and research goals associated with its products in development.

52.    This likelihood of future success has been touched on by those in the financial media.   For example, as stated above, Goldman Sachs' has been reported on being high on RSP's future value stating, "RSP shares still trade at a discount relative to other high-quality Permian E&P names."

53.    Obviously, the opportunity to invest in such a company on the rise is a great coup for Concho, however it undercuts the foresight and investment of Plaintiff and all other public stockholders who have done the same.

54.    Finally, the Proposed Transaction represents a significant synergistic benefit to Concho, which operates in the same industry as RSP, and who will see its investment in the Permian Basin rise dramatically.   Specifically, as noted in the press release announcing the Proposed Transaction, the synergies derive through the Proposed Transaction are presently worth "more than $2 billion."

55.    Speaking on such immense synergistic benefits, Tim Leach, CEO and Chairman of Concho noted in the press release announcing the Proposed Transaction that the Acquisition of RSP is, "This combination allows us to consolidate premier assets that seamlessly fold into our drilling program, enhance our scale advantage and reinforce our leadership position in the Permian Basin, all while strengthening our platform for delivering predictable growth and returns."

56.    Further in the March 28, 2018 Investor Presentation, with respect to the immense synergies available to Concho as a result of the Proposed Transaction, Mr. Leach stated:

> The keys are enhancing the best part of our portfolio, our premium resource base, providing significant scale and operational synergies unfolded into our machine and accretive to key metrics and additive to the strength of the balance sheet. Today's transaction checks all of those boxes. As I mentioned before, it's consistent with our disciplined strategy of pursuing the right acquisition to build for the future. And it provides both immediate and long-term value creation opportunities. I expect Concho to capture both operational synergies and corporate level savings. These synergies, which are estimated to have a present value exceeding $2 billion derive from the highly complementary and blocky nature of these assets. In addition to our size, scale and execution strength, provided us with the unique ability to capitalize on these new complementary assets. This ability includes moving these assets into manufacturing mode, which generates cost savings and minimizes parent-child locations. It also includes developing these assets with long laterals and leveraging shared infrastructure

systems. We've consistently described how large contiguous blocks of acreage are strategic and deepen our war chest of premium locations. Directing capital to these locations will enhance our overall program economics. We also plan to leverage our land ground game on these assets. That's our strategy for optimizing assets by coring up acreage in swaps and trades. We did a record number of trades over the last several months and we expect this to continue, as more operators focus on long lateral, continuous development. In addition to operational synergies, there are financial benefits we expect from corporate level savings. And those come from the areas you would expect, including the overlapping public company cost and financing cost. In all, we estimate annual corporate cost savings of $60 million. We said many times before, we are looking to add great assets to our portfolio, but not at the expense of our financial performance or position. We expect the transaction to be immediately accretive to our per-share metrics before accounting operational synergies. These metrics include net asset value, earnings, cash flow, debt adjusted production and cash flow growth. All in the first year.

57.     Moreover, those in the financial media have noted the substantial and immediate benefits Concho will receive as a result of the consummation of the Proposed Transaction.  For Example, Keisha Bandz in an April 3, 2018 *Market Realist* article notes that the transaction will be "immediately accretive" to Concho.

58.     Additionally, Matthew DiLallo writing for *The Motley Fool* in an April 1, 2018 article notes that the combined company will be "the largest producer in the region", with the "biggest drilling program in the area, with plans to run 27 rigs across the nearly 640,000 acres they'll control."  DiLallo goes on to report that the Proposed Transaction is seemingly just the first step in Concho's plan for further acquisition in the industry, with Concho CEO Leach quoted in the article as stating that the deal serves as "a road map for in-basin consolidation."

59.     Clearly, while the deal will be beneficial to Concho it comes at great expense to Plaintiff and other public stockholders of the Company, who will see their stock position reduced dramatically.

60.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Concho at the expense of RSP and RSP stockholders, which

clearly indicates that RSP stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

61.     The Merger Agreement contains certain provisions that unduly benefit Concho by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that requires RSP to pay up to $250 million to Concho if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, RSP must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

62.     The Merger Agreement also contains a "No Solicitation" provision that restricts RSP from considering alternative acquisition proposals by, *inter alia*, constraining RSP's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"written Company Competing Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

63.     Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.   Here, the Individual Defendants agreed to provide to Concho information in order to match any other offer, thus providing Concho access to the unsolicited

bidder's financial information and giving Concho the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Concho's.

64.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

65.     In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness.  In a conventional transaction which contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable.  Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders.  The Merger Agreement contains none of these protections.  Rather, the Merger Agreement contains a *fixed* exchange ratio of 0.320 which means that RSP stockholders will receive 0.320 shares of Concho common stock for each of their shares, *regardless of Concho's stock price at the close of the transaction*.  Thus, the consideration payable to RSP stockholders is not insulated from fluctuations in Concho's stock price, and stockholders are left in the precarious position of not knowing whether the consideration payable to them will decline further

66.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

67.    RSP insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of RSP.

68.    Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  For example, upon the consummation of the Proposed Transaction, each outstanding Company equity award, including restricted stock awards, performance-based restricted stock, and accelerated time-based and performance-based restricted stock, will be canceled and converted into the right to receive the merger consideration or Concho stock in certain amounts.  Notably, Company insiders, including certain Individual Defendants, will receive ***over eighty million dollars*** in consideration upon the consummation of the Proposed Transaction due to the cashing out of their equity awards as follows:

| | Number of Shares of RSP Time-Based Restricted Stock to be Accelerated (#) | Number of Shares of RSP Performance-Based Restricted Stock to be Accelerated (#) | Value of Accelerated Shares of RSP Restricted Stock ($) |
|---|---|---|---|
| **Executive Name** | | | |
| Steven Gray | 159,466 | 476,604 | 29,176,531 |
| Scott McNeill | 71,076 | 218,981 | 13,304,915 |
| Zane Arrott | 65,806 | 203,997 | 12,375,864 |
| William Huck | 56,823 | 168,260 | 10,324,557 |
| James Mutrie | 44,811 | 131,549 | 8,089,633 |
| Erik Daugbjerg | 49,804 | 134,295 | 8,444,621 |
| **Director Name** | | | |
| Michael Grimm | 8,095 | N/A | 371,318 |
| Joseph B. Armes | 5,343 | N/A | 245,083 |
| Kenneth V. Huseman | 5,343 | N/A | 245,083 |
| Matthew S. Ramsey | 5,343 | N/A | 245,083 |
| Michael W. Wallace | 5,343 | N/A | 245,083 |

69.    Moreover, certain employment agreements with all RSP executives, including certain directors, are entitled to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant

each director or officer entitled to them millions of dollars, compensation not shared by RSP's common stockholders.

70.    The following table sets forth the Golden Parachute compensation for certain RSP directors and officers, as well as their estimated value payable:

**Golden Parachute Compensation**

| | Cash ($)(1) | Equity ($)(2) | Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Steven Gray | 6,508,438 | 29,176,531 | 49,056 | 35,734,025 |
| Scott McNeill | 2,968,873 | 13,304,915 | 61,014 | 16,334,802 |
| Zane Arrott | 2,837,346 | 12,375,864 | 61,014 | 15,274,224 |
| William Huck | 2,623,102 | 10,324,557 | 61,014 | 13,008,673 |
| James Mutrie | 2,270,198 | 8,089,633 | 41,292 | 10,401,123 |
| Erik Daugbjerg | 2,305,156 | 8,444,621 | 61,014 | 10,810,791 |

71.    In addition, many Company insiders likely hold large, illiquid blocks of RSP common stock, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.  However, Plaintiff and other RSP common stockholders are left in the dark as to just how disparate the treatment between themselves and Company insiders are, as the S-4 does not divulge the specific nature of either the Board or Company officer's common stock ownership interests in RSP.  This is especially noteworthy as the S-4, in the Background of the Merger section, explicitly states that Defendant Wallace is one of RSP's largest stockholders.

72.    Finally, at least one yet-to-be-named RSP Board Member, will be retained by the surviving corporation post-close of the Proposed Transaction as a new addition to the Concho Board.

73.    Finally, the S-4 reveals that several members of the Concho Board, own thousands of shares of RSP and that Concho President and CFO Jack Harper, his family, and affiliated entities, own large and/or controlling interests in Hedloc Investment Company, LP ("Hedloc") and Davis Partners, Ltd. ("Davis"), both of which have engaged in numerous business transactions with RSP in the last year for the sale or lease of certain oil and gas interests

to RSP. Not only did Harper or his family receive, through either Hedloc or Davis, almost three quarters of a million dollars in 2017, but the S-4 reveals that Harper's wife received payments directly from RSP relating to oil and gas interests totaling over two hundred thousand dollars in 2017. Such well entrenched business relationships between RSP and Concho's insiders make it easy to see why Concho was the favored buyer throughout the sales process, and/or why no market check was conducted.

74.     It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

75.     Thus, while the Proposed Transaction is not in the best interests of RSP stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete S-4***

76.     On April 20, 2018, the Defendants caused to be filed with the SEC a materially misleading and incomplete S-4 that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

77.     Specifically, the S-4 fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy fails to disclose:

> a.    The S-4 fails to disclose adequate or specific reasoning for the Board's decision to not engage in a market check of other "Pure Play" Permian Basin

operators after it determined that a combination with such a "Pure Play" entity was desirous on March 8, 2018;

b. The S-4 fails to disclose the why no committee of independent Board members was created to run the sales process;

c. The S-4 fails to disclose the specific Company stock ownership interests of all Board Members, RSP Officers, and other Company insiders;

d. The S-4 fails to disclose what effect, if any, the interests of several members of the Concho Board in RSP, including Concho CFO Harper's involvement in several business transactions with RSP through Hedloc and Davis, had on the sales process;

e. The S-4 fails to disclose the specific nature of the standstill provisions included in the confidentiality agreements entered into between RSP and Concho and between RSP and Company A, including whether the disclosed standstill provisions contained "don't-ask, don't-waive" clauses, and under what conditions, if any, such clauses would fall away; and

f. The S-4 fails to disclose the differences, if any, between the confidentiality agreements entered into between RSP and Concho on the one hand and RSP and Company A on the other.

*Omissions and/or Material Misrepresentations Concerning RSP's Financial Projections*

78.    The S-4 fails to provide material information concerning financial projections provided by RSP's management and relied upon by TPH in its analyses. The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of TPH's fairness opinion, TPH reviewed

"certain internal financial information and forecasts for RSP prepared by management of RSP". Accordingly, the S-4 should have, but fails to provide, certain information in the projections that RSP's management provided to the Board and TPH. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

79.     The S-4 fails to provide material information concerning the financial projections prepared by the Company's management.

80.     The S-4 fails to provide material information concerning the financial projections prepared by RSP management. Specifically, the S-4 fails to disclose the material line items for the following metrics:

    a.   The line items used to calculate EBITDAX, including:

        i.   Oil and gas revenues;

        ii.   Operating expenses;

        iii.   Production and ad valorem taxes;

        iv.   Cash hedging losses;

        v.   General and administrative expenses (including stock based compensation).

    b.   Changes in working capital; and

    c.   Unlevered free cash flows

81.     Moreover, the S-4 provides projections for certain non-GAAP (Generally Accepted Accounting Principles) financial measures, including EBITDAX. Despite disclosing

that such figures are non-GAAP measures, the S-4 fails to disclose net earnings, the most directly comparable measure calculated in accordance with GAAP.

82.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

83.    Without accurate projection data presented in the S-4, Plaintiff and other stockholders of RSP are unable to properly evaluate the Company's true worth, the accuracy of TPH's financial analyses, or make an informed decision whether to vote their Company stock in the Proposed Transaction.

### Omissions and/or Material Misrepresentations Concerning Concho's Financial Projections

84.    The S-4 fails to provide material information concerning financial projections provided by Concho's management and relied upon by TPH in its analyses.  The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of TPH's fairness opinion, TPH reviewed "certain internal financial information and forecasts for Concho prepared by management of Concho".  Accordingly, the S-4 should have, but fails to provide, certain information in the projections that Concho's management provided to the Board and TPH.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

85.    The S-4 fails to provide material information concerning the financial projections prepared by Concho's management.

86.    The S-4 fails to provide material information concerning the financial projections prepared by Concho management.  Specifically, the S-4 fails to disclose the material line items for the following metrics:

a.  The line items used to calculate EBITDAX including the following:

    i.  Earnings;

    ii.  Interest;

    iii.  Taxes

    iv.  Depreciation

    v.  Amortization

    vi.  Exploration expenses

b.  The line items used to calculate Operating Cash Flow, including:

    i.  Interest expense;

c.  Changes in working capital; and

d.  Unlevered free cash flows

87.    Finally, Concho has provided projections for only 2018-2020, while TPH's analysis makes it clear that projections up until at least 2022 were provided.  The S-4 should properly disclose all projections used in TPH's financial analyses.

88.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

89.    Without accurate projection data presented in the S-4, Plaintiff and other stockholders of RSP are unable to properly evaluate the Concho's true value, the accuracy of TPH's financial analyses, or make an informed decision whether to vote their Company stock in the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by TPH*

90.    In the S-4, TPH describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

91.    With respect to the *Comparable Companies Analysis,* the S-4 fails to disclose:

a.    The objective selection criteria for each of the selected companies;

b.    The specific enterprise value and equity value for the compared companies and RSP and Concho on a standalone basis;

c.    Whether TPH performed any type of benchmarking analysis for the Company in relation to each of the selected companies analyzed

92.    With respect to the *Selected Transactions Analysis*, the S-4 fails to disclose:

a.    The objective selection criteria for each of the selected transactions;

b.    The specific transaction value for the transactions analyzed.

93.    With respect to the *Discounted Cash Flow Analysis,* the S-4 fails to disclose the specific inputs and assumptions used to determine the discount rate range of 9.0% to 11.0% as applied to RSP and 7.5% to 9.5% as applied to Concho.  The S-4 also fails to disclose RSP and Concho's terminal values.

94.     With respect to the *Net Asset Value Analysis*, the S-4 fails to disclose the specific inputs and assumptions used to determine the discount rate range of 9.0% to 11.0% as applied to RSP and 7.5% to 9.5% as applied to Concho, including each company's weighted average cost of capital.

95.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

96.     Without the omitted information identified above, RSP's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, RSP's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

## FIRST COUNT
### Claim for Breach of Fiduciary Duties
### (Against the Individual Defendants)

97.     Plaintiff repeats all previous allegations as if set forth in full herein.

98.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

99.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in RSP.

100.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the

stockholders of RSP by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of RSP to its public stockholders.

101.    Indeed, Defendants have accepted an offer to sell RSP at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

102.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

103.    The Individual Defendants dominate and control the business and corporate affairs of RSP, and are in possession of private corporate information concerning RSP's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of RSP which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

104.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

105.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of RSP's assets and have been and will be prevented from obtaining a fair price for their common stock.

106.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

107.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**
**Violations of Section 14(a) of the Exchange Act**
**(Against All Defendants)**

108.    Plaintiff repeats all previous allegations as if set forth in full herein.

109.    Defendants have disseminated the S-4 with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

110.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

111.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

112.    The S-4 was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the S-4 is materially misleading and omits material facts that are necessary to render them non-misleading.

113.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

114.    The Individual Defendants were at least negligent in filing an S-4 that was materially misleading and/or omitted material facts necessary to make the S-4 not misleading.

115.    The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### THIRD COUNT
### Violations of Section 20(a) of the Exchange Act
### (Against all Individual Defendants)

116.    Plaintiff repeats all previous allegations as if set forth in full herein.

117.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information

provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the S-4 was materially misleading to Company stockholders.

118.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the S-4 and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the S-4.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the S-4 before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

119.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of RSP's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the S-4 was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the S-4 and are therefore responsible and liable for the misrepresentations contained herein.

120.    The Individual Defendants acted as controlling persons of RSP within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause RSP to engage in the wrongful

conduct complained of herein. The Individual Defendants controlled RSP and all of its employees. As alleged above, RSP is a primary violator of Section 14 of the Exchange Act and SEC Rule S-4. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for RSP and obtain a transaction which is in the best interests of RSP and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 25, 2018

**KENDALL LAW GROUP, PLLC**

*/s/     Joe Kendall*
Joe Kendall
State Bar No. 11260700
Jamie J. McKey
State Bar No. 24045262
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
jkendall@kendalllawgroup.com
jmckey@kendalllawgroup.com

**OF COUNSEL**

Evan J. Smith, Esquire
Marc L. Ackerman, Esquire
**BRODSKY & SMITH, LLC**
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Phone: (610) 667-6200
Facsimile: (610) 667-9029
esmith@brodskysmith.com
mackerman@brodskysmith.com

*Attorneys for Plaintiff*